**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE: LINDA J. NOFZIGER**
**Bankruptcy Case No. 6:04-Bk-9253-KSJ**

---

**MITCHEL KALMANSON,**
                     **Appellant,**

**-vs-**                                                                   **Case No. 6:06-cv-1577-Orl-31**

**LINDA J. NOFZIGER,**
                     **Appellee.**

---

# ORDER

The Appellant, Mitchel Kalmanson ("Kalmanson"), appeals the denial of his objections to a homestead exemption claimed by the Appellee, Linda Nofziger ("Nofziger" or "Debtor").[1]

## I.  Background[2]

On August 12, 2004, Nofziger filed a petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 1-4 at 4). In January 2006, after encountering additional financial difficulties, Nofziger converted this case to a Chapter 7 liquidation. (Doc. 1-4 at 4).

Nofziger was married when she filed her bankruptcy petition. (Doc. 1-4 at 2). She and her then-husband, Arlynn Nofziger, had bought a house in Eustis, Florida (the "Eustis House") and

---

[1] The Chapter 7 Trustee also objected to the claimed exemption but has not appealed the decision of the Bankruptcy Court.

[2] So far as the Court is aware, the facts in this background section are not contested by the Appellant. *See* Doc. 11 at 7 (stating that the proceeding "was presented to the Bankruptcy Court on essentially uncontested facts.").

moved into it in 2003.  (Doc. 1-4 at 2-4).  They separated later in 2003, and Arlynn Nofziger moved out.  (Doc. 1-4 at 3).  The Nofzigers were divorced in November 2004, during the pendency of the bankruptcy proceedings.  (Doc. 1-4 at 2).  Pursuant to a marital settlement agreement ("MSA") in the divorce proceedings, Arlynn Nofziger agreed to transfer all of his "right, title and interest" in the Eustis House by quit claim deed to the Debtor.  (Doc. 1-4 at 4).  The deed was executed on October 28, 2004.  (Doc. 1-4 at 4).

Also in the MSA, the Nofzigers agreed that Arlynn Nofziger would "have exclusive ownership and possession" of a business known as "Arlynn's Race Car Parts and Engines" (the "Race Car Business").  (Doc. 3-6 at 5).  The language of the MSA did not indicate that Nofziger had ever had any interest in the Race Car Business or that she was transferring any such interest to her former spouse.

In her initial financial schedules in this case, which were filed in September 2004, Nofziger listed her joint ownership interest in the Eustis House but did not claim it as exempt.  (Doc. 1-4 at 2 n.2).  Nofziger also claimed an interest of "unknown" value in the Race Car Business.  (Doc. 2-6 at 4).  On February 8, 2006, Nofziger amended her schedules to claim that the Eustis House was her homestead and therefore exempt.  (Doc. 1-4 at 2 n.2).

On October 13, 2006, Kalmanson filed an objection to Nofziger's claimed homestead exemption.  (Doc. 2-3).  He contended that Nofziger received her ex-husband's interest in the Eustis House within 180 days of filing her petition, that the Bankruptcy Code automatically made that interest property of the estate, and that that interest was subject to administration by the Chapter 7 Trustee.  (Doc. 2-3 at 1-2).  The Bankrutpcy Court overruled Kalmanson's objection and denied a subsequent motion for reconsideration.  (Doc. 1-4, Doc. 2-6).  This appeal followed.

**II.     Standards**

Section 541 of the Bankruptcy Code provides in pertinent part that the filing of a bankruptcy case creates a bankruptcy estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case.  11 U.S.C. § 541(a)(1).  This estate also includes any interest in property that the debtor acquires within 180 days of the filing date by way of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree, so long as that property would have been property of the estate if the debtor had acquired it by the filing date.  11 U.S.C. § 541(a)(5)(B).

An individual is permitted to exempt property from the bankruptcy estate by claiming exemptions authorized by 11 U.S.C. § 522.  Section 522 permits states to opt out of the federal exemptions provided for in subsection 522(d) and limit its residents to the those exemptions provided for under state law.  11 U.S.C. § 522(b).  The state of Florida has exercised this option.  Fla. Stat. § 222.20 (2006).

> Article X, Section 4(a)(1) of the Florida Constitution provides, in pertinent part:
>
> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead ...

The party objecting to the exemption has the burden of proving, by preponderance of the evidence, that the debtor is not entitled to the exemptions claimed.  *In re Wilbur*, 206 B.R. 1002, 1006 (Bankr.M.D.Fla. 1997).

In addition to creating a bankruptcy estate, the filing of a petition in bankruptcy also operates as a stay, applicable to all entities, of any act to obtain possession of property of the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). Actions taken in violation of the automatic stay are void and without effect. *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982). In an appeal of a bankruptcy court decision, the district court sits as an appellate court and thus applies the clearly erroneous standard to the bankruptcy court's findings of fact but reviews conclusions of law on a *de novo* basis. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994).

**III.    Analysis**

Kalmanson argues that Nofziger improperly traded her non-exempt interest in the Race Car Business to her former husband in exchange for his interest in the Eustis House. He contends that the transfer of the interest in the Race Car Business was in violation of the automatic stay, and therefore void. Kalmanson seeks a determination that the Race Car Business and the ex-husband's interest in the Eustis House are part of the bankruptcy estate and subject to administration by the Chapter 7 Trustee. (Doc. 11 at 19).

**A.    The Race Car Business as consideration for the Eustis House**

The Bankruptcy Court found that there was no evidence that Nofziger used any interest she might have had in the Race Car Business as consideration for her husband's interest in the Eustis House. (Doc. 2-6 at 4). Kalmanson offers no evidence that Nofziger transferred an interest in the Race Car Business, much less that she did so as a quid pro quo for her husband's interest in the Eustis House. The actual text of the MSA does not support Kalmanson's argument that Arlynn Nofziger "received" the Race Car Business pursuant to that document:

> **ARLYNN'S RACE CAR PARTS AND ENGINES:** The parties agree that the Husband shall have exclusive ownership and possession of the business known as "ARLYNN'S RACE CAR PARTS AND ENGINES". The Wife acknowledges that she has no right, title, or interest in said business now or in the future.

(Doc. 3-6 at 5) (emphasis in original). In contrast, the MSA explicitly required *transfers* of one spouse's interest in other assets, such as the Eustis House and two motor vehicles, to the other spouse. (Doc. 3-6 at 5-6). Of course, it is possible that the Nofzigers secretly agreed to exchange her interest in the Race Car Business for his interest in the Eustis House by way of the MSA. The language of the MSA is not the final word on this issue. But it does not support Kalmanson's contention, and he offers nothing else. Kalmanson has not demonstrated that the Bankruptcy Court clearly erred in rejecting this contention. As such, his equitable argument – that Nofziger should not be able to exempt the Eustis House because she could not have exempted the Race Car Business (Doc. 11 at 6) – must fail.

### B.     The Race Car Business as property of the estate

Kalmanson also argues that Nofziger violated the automatic stay by transferring her interest in the Race Car Business out of the bankruptcy estate. As such, he seeks a determination that Nofziger's interest in that business remains part of the bankruptcy estate, subject to administration by the Chapter 7 Trustee. This argument fails for a number of reasons.

First, it does not appear that Nofziger made this argument before the Bankruptcy Court, and therefore this issue is not properly before this court. The Bankruptcy Court did not explicitly decide whether the interest in the Race Car Business was property of the estate in the original order or in the order denying reconsideration. This is understandable, because the original order dealt with objections to exemptions rather than, say, a motion for sanctions for violations of the

automatic stay.  To the extent this issue arose, it did so only in the context of deciding whether Nofziger was entitled to exempt the Eustis House, not whether her purported interest in the Race Car Business was property of the estate.  (Doc. 2-6 at 4).

Also, it is doubtful that Nofziger possesses standing under the Bankruptcy Code to accomplish what he now seeks.  In essence, Kalmanson asks this Court to undo the postpetition transfer of whatever interest Nofziger might have possessed in the Race Car Business.  Section 549 of the Bankruptcy Code provides authority for avoidance of unauthorized postpetition transfers – but that authority is provided to trustees, not creditors such as Kalmanson.  *See*, *e.g.*, *Matter of Pointer*, 952 F.2d 82, 88 (5th Cir. 1992) (holding that plain language of Section 549 "restricts its use to trustees or debtors-in-possession").  Although some case law suggests that the Bankruptcy Court may, under certain circumstances, authorize a creditor to pursue an avoidance action under Section 549, the Court finds no suggestion in the record that Kalmanson possesses such authorization.  To the contrary, in rejecting Kalmanson's contention that Nofziger traded away her interest in the Race Car Business, the Bankruptcy Court noted that "the Trustee has not sought to administer [that] asset in this case."  (Doc. 2-6 at 4).  Obviously, based on this exchange, the Bankruptcy Court had not authorized Kalmanson to pursue that asset on behalf of the estate.  Kalmanson's request for a declaration on this point will be denied.

### C. The Eustis House as property of the estate

Kalmanson argues that Arlynn Nofziger's interest in the Eustis House was transferred to the Debtor within 180 days of her bankruptcy petition and as a result of a property settlement. (Doc. 11 at 11).  Kalmanson contends that that interest is part of the bankruptcy estate pursuant to Bankruptcy Code § 541(a)(5)(B).  (Doc. 11 at 11).

The Bankruptcy Court found that, despite a scrivener's error that resulted in the omission of her name from the deed when the Eustis House was first purchased, Nofziger "clearly had an equitable, if not legal, interest in the [Eustis House] on the petition date." (Doc. 1-4 at 5). As such, the Bankruptcy Court concluded that Nofziger's interest in Eustis House was property of the bankruptcy estate, "just as every other debtor's home is considered property of a debtor's estate." (Doc. 1-4 at 5-6).

Kalmanson does not challenge this conclusion on appeal. Instead, Kalmanson argues that Nofziger received her former husband's interest in the Eustis House within 180 days of her bankruptcy filing, and that Section 541(a)(5)(B) made *that* interest part of the bankruptcy estate.

It is not entirely clear that Nofziger's contention truly conflicts with the decision below. After considering this issue, the Bankruptcy Court concluded that

> The debtor's interest in her home was subject to exemption on the petition date and her later receipt of the quit-claim deed from her former husband did nothing to expand her estate, other than to clarify that she is the legal title holder to the property and that he no longer claims any legal interest in the home. The home was subject to exemption by the debtor on the petition date, on the date the debtor received the quit claim deed, and on all of the other dates this bankruptcy has been pending. [Arlynn] Nofziger's actions did nothing to increase or reduce the debtor's estate. No creditor has been harmed. The trustee gained nothing new to administer.

(Doc. 1-4 at 10). Obviously, the Bankruptcy Court decided that the quit claim deed did not result in a net gain to the bankruptcy estate. But the basis for this conclusion is not entirely clear. The Bankruptcy Court might have concluded that Nofziger did not receive any new interest via the quit claim deed and that Section 541(a)(5)(B) was therefore irrelevant. Or it could have concluded that whatever interest she received via that deed (and which Section 541(a)(5)(B) then made part of the bankruptcy estate) was exempt as homestead. For his part, Kalmanson does not attempt to

define the scope of the interest possessed by Arlynn Nofziger on the petition date, or how the Debtor's interest in the Eustis House was altered, if at all, after Arlynn Nofziger executed the quit claim deed.

In any event, Kalmanson contends that Nofziger cannot claim an exemption for whatever interest in the Eustis House she received from her former husband.  (Doc. 11 at 15).  Kalmanson first argues that no exemption is "available" for this interest.  Kalmanson points to Section 522(b)(3)(A) of the Code, which permits debtors to exempt from property of the estate "any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition."  Kalmanson argues that, as of the filing of the petition, the Eustis House was titled only in the name of Arlynn Nofziger.  As such, the argument continues, only Arlynn Nofziger was entitled to claim a homestead exemption for the Eustis House on the filing date.  (Doc. 11 at 15).

Kalmanson's argument appears to rely on a misinterpretation of Section 522(b)(3)(A), reading it as mandating an assessment of the property's exempt status on the filing date, rather than an assessment of the applicable law on that date.  Kalmanson has not provided any case law supporting such an interpretation.  More importantly, Kalmanson did not present this issue to the Bankruptcy Court.[3]  As such, he has failed to preserve it for appeal.  *In re Espino*, 806 F.2d 1001, 1002 (11th Cir. 1986).

Kalmanson also argues that a Fourth Circuit case – *In re Cordova*, 73 F.3d 38 (4th Cir. 1996) – supports his contention that property acquired after the filing date may not be exempted.

---

[3]In noting that Nofziger had belatedly amended her schedules to claim a homestead exemption for the Eustis House, the Bankruptcy Court stated that no party had asserted that the Debtor could not properly do so.  (Doc. 1-4 at 6).

In the *Cordova* case, the debtor claimed an exemption for property she held as a tenant by the entireties with her spouse on the filing date but which was subsequently awarded to her in fee simple pursuant to a divorce decree. *Id.* at 39. Virginia law exempts entireties property from the claims of individual creditors. *Id.* at 40. The divorce occurred within 180 days after the filing of the bankruptcy case. *Id.* Pursuant to Virginia law, the divorce decree automatically extinguished the tenancy by the entirety, turning it into a fee simple interest. *Id.* The trustee argued, and the lower courts agreed, that because the divorce became final within 180 days after the commencement of the bankruptcy case, the debtor's fee simple interest in the property became part of the bankruptcy estate pursuant to 11 U.S.C. 541(a)(5)(B). *Id.* Moreover, because the divorce decree automatically extinguished the tenancy by the entirety, the debtor could not claim an exemption for her interest. *Id.*

Under Virginia law, a person holding property as a tenant by the entirety is "seized of the undivided whole of the estate". *Id.* at 42. Because of this, the debtor argued on appeal that she essentially held a fee simple interest in the property both before and after the divorce, and that therefore she did not acquire any new "interest in property" that could become property of the estate pursuant to Section 541(a)(5)(B).[4] The United States Court of Appeals for the Fourth Circuit disagreed, finding that – primarily due to her now-unfettered right to dispose of or encumber the property – the debtor's sole ownership of a fee simple interest was a separate property interest, distinct from the tenancy-by-the-entirety interest that she held before the divorce. *Id.* at 42. As such it became property of the estate once she acquired it.

---

[4] The debtor also argued that exemptions are to be determined as of the filing date, and that post-filing actions cannot affect them – an argument not raised in the instant case. *Id.*

Even assuming that the Eleventh Circuit would reach the same conclusion as the Fourth Circuit did, the *Cordova* case does not help Kalmanson here.  The debtor in *Cordova* lost because she could no longer exempt her interest in her house.  In this case, there is no argument as to whether Nofziger is entitled to exempt her interest in the Eustis House.  The Eustis House was homestead property on the filing date and homestead property on the date that Arlynn Nofziger executed the quit claim deed.  However one might describe the interests the Debtor has held and now holds in the Eustis House, they are exempt from the claims of creditors such as Kalmanson.

**IV.   Conclusion**

In consideration of the foregoing, the order of the Bankruptcy Court is **AFFIRMED**.  The Clerk is directed to close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 20, 2007.

　　　　　　　　　　　　　　　　　　　　　　　GREGORY A. PRESNELL
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party